```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT


WHITE RIVER AMUSEMENT PUB, INC.,     :
                Plaintiff,           :
                                     :
     v.                              :  File No. 1:02-CV-320
                                     :
TOWN OF HARTFORD, VERMONT;           :
THE SELECTBOARD OF HARTFORD,         :
VERMONT; HUNTER RIESEBERG, as the    :
Town Manager of Hartford, Vermont;   :
TODD STEADMAN, as Chairman,          :
Selectboard of the Town of           :
Hartford, Vermont; LEONARD           :
BERLINER, GAYLE OTTMAN,              :
RAY CERASOLI, and RICHARD BALLOU,    :
as Members of the Selectboard,       :
Town of Hartford, Vermont; and       :
JOSEPH ESTEY, as Chief of Police     :
of Hartford, Vermont,                :
                Defendants.          :
                                     :
_____ :
```

RULING ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS
(Paper 101)

I.  Introduction

Now pending is Plaintiff's Final Motion for Attorney's Fees and Costs under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d). Plaintiff requests an award of $857,511.00 in attorney's fees and $36,611.88 in other costs. (Paper 101).[1]  For the following reasons, Plaintiff's motion is granted in part and denied in part in that the Court awards Plaintiff $382,927.50 in attorney's fees

---

[1] Plaintiff has recently supplemented these amounts to include "fees on fees." (Papers 129, 130 and 135).

1

and declines to award costs until Plaintiff files an itemized Bill of Costs under 28 U.S.C. § 1920.

II. Discussion[2]

    A. Liability

As a threshold matter, the Court finds unconvincing Defendants' arguments that they should not be required to pay fees or costs.

First, Plaintiff's motion is not time-barred because the circumstances of this case take the motion outside of Fed. R. Civ. P. 54(d)(2)(B)'s 14-day filing period. Specifically: (1) Plaintiff originally sought attorney's fees and costs by timely filing a motion with this Court on December 30, 2005, (Paper 89); when Defendants filed their notice of appeal, the Court denied Plaintiff's motion without prejudice to renew after the Second Circuit decided the appeal, (Paper 95), without imposing specific time limitations or briefing schedules on Plaintiff; and (3) thereafter, Plaintiff filed a timely request for attorney's fees with the Second Circuit on April 9, 2007, which the Second Circuit referred to this Court, (Paper 122-2). Considering these particularities, it was unnecessary for Plaintiff to refile a motion for fees with this Court within fourteen days of any

---

[2]Familiarity with the various opinions and rulings made during the course of this litigation is presumed. See, e.g., White River Amusement Pub, Inc. v. Town of Hartford, 481 F.3d 163 (2d Cir. 2007); White River Amusement Pub, Inc. v. Town of Hartford, 412 F. Supp. 2d 416 (D. Vt. 2005).

action by the Second Circuit.  In fact, it was entirely reasonable, considering the Second Circuit's referral, for Plaintiff to have expected a new briefing schedule to be imposed by this Court after the Circuit's mandate issued.  Moreover, this is not a case involving neglect on Plaintiff's part or surprise to Defendants.  Defendants have been on notice that fees would be a significant part of this case since 2005 when Plaintiff first filed a timely motion for fees.  This more than satisfies the underlying rationale of Rule 54's discretionary time limit.

Second, the Court will not deny Plaintiff's request for costs due to Plaintiff's failure to submit a Bill of Costs to the Court Clerk for initial determination.  Bypassing the Clerk of the Court makes sense because the Court requested briefing on costs by both sides.  Further, had costs first been submitted to the Clerk, considering the litigiousness of counsel, they would have likely asked the Court to review the Clerk's decision.  The Court will not rule on the issue of costs, however, until Plaintiff submits a Bill of Costs to the Court under 28 U.S.C. § 1920.

Third, it is apparent Plaintiff is a "prevailing party" in that it secured "actual relief on the merits of [its] claim" and "materially alter[ed] the legal relationship between the parties by modifying the defendant[s'] behavior in a way that directly benefits the plaintiff."  Farrar v. Hobby, 506 U.S. 103, 111-12

(1992).  Specifically, at its core this case has always been a constitutional challenge to the Town of Hartford's Public Indecency Ordinance.  Because Plaintiff successfully obtained a ruling from this Court, affirmed by the Second Circuit, that the Ordinance was unconstitutional and could not be enforced, he "cross[ed] the threshold to a fee award of some kind."  See Lyte v. Sara Lee Corp., 950 F.2d 101, 103 (2d Cir. 1991) (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 (1989)).

Fourth, there are several grounds upon which to rebuff Defendants' rehashed arguments concerning mootness.  Primary among them is that this Court and the Second Circuit have consistently found, in no uncertain terms, that Plaintiff's claims are not moot.  Those holdings are therefore the law of the case and will not be revisited.  Of course, Defendants insist they have "new" evidence relating to events of April 2005, but they offer no explanation about why this evidence could not have been discovered with due diligence as early as 2005 before discovery closed and before this Court rendered its decision. See, e.g., United States v. Hall, 434 F. Supp. 2d 19, 24 n.3 (D. Me. 2006) (explaining that the new evidence exception to the law of the case occurs when the proponent proffers significant new evidence, not earlier obtainable in the exercise of due diligence).  This evidence could and should have been developed

back then.  As such, even if the Second Circuit had not already ruled on the issue, Defendants have simply failed to identify any legitimate reason why, having "battled for the court's decision, they should . . . be . . . permitted [] to battle for it again." Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir. 1964).

    Finally, in a last-ditch attempt to avoid paying any money, Defendants play the potentially scurrilous fraud on the court card.  Even if Defendants had filed a proper Fed. R. Civ. P. 60(b) motion – which they did not – Defendants fail to present "clear and convincing" evidence of any type of fraud, let alone "fraud which seriously affects the integrity of the normal process of adjudication."  Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988).  Defendants' fraud on the court theory seems to revolve around the hope that Plaintiff's counsel became aware of an alleged letter terminating Plaintiff's lease sometime around April 2005 and thereafter engaged in an "unconscionable plan . . . designed to improperly influence the court in its decision" on mootness.  (Paper 115 at 18).  There is no evidence, however, much less clear and convincing evidence, Plaintiff's counsel knew of the alleged termination letter such that he would have been in a position to mislead the Court.

    Confident Defendant is liable for some amount of attorney's fees and costs, the Court turns to the determination of the appropriate amount.

B.  <u>Attorney's Fees</u>

In the Second Circuit, attorney's fees are awarded by determining a "presumptively reasonable fee," which is calculated by multiplying a reasonable hourly rate by the number of reasonably expended hours.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 183-84 (2d Cir. 2008).  The reasonable hourly rate is "what a reasonable, paying client would be willing to pay."  <u>Id.</u>  In determining this rate, the district court should consider various factors, including those set out in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974)[3] and:

> should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.

<u>Id.</u> at 190.

---

[3]The twelve <u>Johnson</u> factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  <u>Johnson</u>, 488 F.2d at 717-19.

The presumption remains "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." Id. at 191.  However, "[t]his presumption may be rebutted – albeit only in the unusual case – if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances[.]" Id.

    1.   Reasonable hourly rate

The hourly rates requested by Plaintiff's attorneys are as follows: (1) H. Glenn Alberich - ranging from $350-400; (2) Joseph Machera - $300; and (3) David Putter - $225.  Considering all relevant factors, the Court finds the hourly rates sought in connection with Attorneys Alberich and Machera's services to be excessive for this type of case in this District.  In fact, awards made in similar cases in Vermont have thus far peaked at $225 per hour for partners.  See, e.g., Huminski v. Rutland County Sheriff's Dep't, No. 1:99-CV-160, Paper 314 at 5-6 (D. Vt. Aug. 21, 2006).

This litigation was not a run-of-the-mill case, and counsel for both sides performed skillfully with Plaintiff ultimately achieving a commendable win.  But in this Court's experience, and as Defendants' expert Robert B. Hemley opined, it did not pose legal or factual issues that could not have been effectively

litigated by a number of Vermont attorneys.[4]  Despite this, there is no indication Plaintiff attempted to retain a Vermont attorney.  Instead its agents apparently went straight to Attorneys Alberich and Machera, whose hourly rates "would simply have been too high for a thrifty, hypothetical client - at least in comparison to the rates charged by local attorneys, with which he would have been familiar."  Arbor Hill, 522 F.3d at 185.  The Court also considers that a reasonable client would have attempted to negotiate the fee by emphasizing the reputational benefits that one might accrue by being associated with this case's First Amendment issues.

At bottom, Plaintiff has not established this is the unusual case that would have justified retention of out-of-state attorneys.  Nor has Plaintiff "presented the Court with evidence that the hourly rates for legal representation in civil rights cases, such as the instant matter, have risen since the entry of the award in [Huminski]."  Pasternak v. Baines, 2008 WL 2019812, at *7 (W.D.N.Y. May 8, 2008).  Accordingly, the Court concludes

---

[4]The Court does not give much weight, if any, to the opinion of Plaintiff's expert on the topic of the necessity of out-of-state counsel, primarily because she has never been to Vermont and is wholly unfamiliar with the capabilities of the attorneys practicing here.

Attorneys Alberich, Machera, and Putter are entitled to an hourly rate of $225 for their services.[5]

    2.   <u>Reasonably expended hours</u>

Upon review of the numerous filings and billing records, and based on the Court's knowledge of this litigation, one thing is clear - Plaintiff's counsel spent an inordinate amount of time on this case.  On this score, it is instructive to look at the stark difference between the roughly 3,500 hours spent by Plaintiff's counsel (this case concluded after a summary judgment ruling and one appeal) to the roughly 2,500 hours spent by the plaintiff's counsel in <u>Huminski</u> (which concluded after numerous filings, several appeals, and a jury trial).  It is also instructive to compare the substantial difference between Plaintiff's counsel's hours and the approximately 715 hours spent by defense counsel.

Turning then to each attorney's reasonably expended hours, the materials submitted in connection with the heaviest hitter on Plaintiff's side, Attorney Alberich, are quite voluminous.  They are confusing because of Attorney Alberich's failure to explain in a digestible way how many hours he is seeking to be compensated for, which hours should receive which hourly rate,

---

[5]Mr. Hemley opined "that the median rate of skilled counsel who would be entirely competent to handle this case is in the range of $250."  (Paper 127-3 at 11).  This ruling caps the rate at $225, largely because of Plaintiff's failure to show any evidence that the rates for legal representation rose since <u>Huminski</u>.

9

and which hours were affected by his time reductions.  The problem is compounded by his association with three different firms under varying billing structures, as well as instances of time being billed by junior associates without explanation of how their time factors into the fee calculation, if at all.[6]  Considering these circumstances, and after comparing Attorney Alberich's submissions with the hours exerted by defense counsel in this case and counsel in Huminski, the Court concludes the most practical approach is to make an across-the-board percentage reduction in his compensable hours.  See United States Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving percentage reduction of total fee award to account for vagueness in documentation of certain time entries); In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) ("the district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application") (internal quotation marks and citation omitted); Pasternak, 2008 WL 2019812, at *8 ("In civil rights

---

[6]For instance, the billing records show, and other filings touch on, work completed by junior associates at Alberich's firm(s).  See, e.g., (Paper 103 at 10-11) (Attorney Alberich's affidavit explaining how "[t]he hours deleted include some learning curve time for new associates"); (Paper 126-2 at 8)(Plaintiff's expert report finding "the overall number of hours spent by Mr. Alberich, his co-counsel, and his associates to be reasonable").  Yet Plaintiff's final motion for fees simply has a chart with fees being sought for Attorneys Alberich, Machera, and Putter.  (Paper 101 at 2).

cases where lengthy fee applications are submitted, judges are not expected to rule on the reasonableness of each entry."). Accordingly, the Court reduces the hours spent by Attorney Alberich to a reasonable expenditure of 1500 hours, which at $225 per hour equals $337,500.

Defendants do not take issue with the number of hours expended by Attorney Putter and upon review of the materials presented, the Court finds that 171.9 hours (114.95 hours as set forth in Paper 106 plus 56.95 hours as set forth in Paper 129) are reasonable for the role he played in this litigation.  At $225 per hour, this equals $38,677.50.

Finally, Attorney Machera's value to this case largely focused on initial client relations.  After that, however, he did not provide substantial assistance and the Court agrees with Mr. Hemley's opinion "that Mr. Alberich and Mr. Putter would likely have achieved the same outcome without the efforts of Mr. Machera."  (Paper 127-3 at 9).  Accordingly, utilizing its discretion, the Court finds Attorney Machera reasonably expended 30 hours of service, which at $225 per hour equals $6,750.

Based upon the foregoing, the Court computes the presumptively reasonable fee as follows: (1) Attorney Alberich, $337,500 (1500 hours at $225 per hour); (2) Attorney Putter, $38,677.50 (171.9 hours at $225 per hour); and (3) Attorney Machera, $6,750 (30 hours at $225 per hour).  This equals a total

figure of $382,927.50, which the Court concludes is a reasonable and appropriate attorney's fees award for this case.

    C.   <u>Other Costs</u>

The Court declines Plaintiff's invitation to piece together and categorize the various costs requested.  Accordingly, Plaintiff shall submit a Bill of Costs under 28 U.S.C. § 1920 to the Court on or before June 24, 2008.  Defendants shall respond by July 1, 2008.  No replies will be entertained.

III. <u>Conclusion</u>

The Court awards Plaintiff $382,927.50 in attorney's fees and defers ruling on other costs and expenses until the parties file the requested submissions.

    SO ORDERED.

    Dated at Brattleboro, Vermont, this 10th day of June, 2008.

<u>/s/ J. Garvan Murtha</u>
J. Garvan Murtha
United States District Judge